Williams. C. J.
It is not contended that there is sufficient ground for disturbing the judgments below for lack of evidence tending to prove that the negligeneé charged against the defendant was the cause of the plaintiff’s loss; but it is claimed the evidence did not establish gross or wilful negligence, and that under the law of Illinois where the contract for the transportation of the horses was made, it was competent for a common carrier of goods to limit his liability, by special agreement, except as against his negligence of that character. And the principal contention of counsel for the plaintiff in error is, that the trial court erred in its charge concerning the law of Illinois on that subject; the complaint being that the charge, in substance, was a statement of the rule established in this state, instead of that which obtains in Illinois. The parties put in evidence several decisions of the supreme court of that state to prove the law of the state, and counsel in argument seek to maintain different interpretations of those decisions favorable to their respective clients. But if the rights, of the parties are to be determined by the laws of this state, and not by those of Illinois, the charge was not erroneous or prejudicial, though given as the law of that state.
There is nothing to show that any traffic arrangement existed between the two railroad companies, nor any agency or authority of one to contract for the other; and assuming that the plaintiff in error, bjr accepting the horses from the other company, and undertaking to transport them over its line, became a party to the contract with the plaintiff below, it did so at Indianapolis; and its contract was to carry the horses from that point to their destination. No part of its performance of the contract *78 was to take place in the state of Illinois ; aud if the carriage of the property over that part of its road which is located in Indiana could be considered as a performance having the effect 6f making the rights of the parties under the contract subject to the laws of that state, none differing from those of this state were pleaded or proven, and there is no presumption- that they were different. But if the law of Indiana were shown to be the same as that of Illinois is claimed to be, it would not be the law governing this contract. We understand the rule to be, that where a contract is made in one state to be performed in part in another, and an action is brought for a breach of that part of the contract, the rights of the parties must be determined according to the law of the latter state. Story on Contracts, section 655; Barter v. Wheeler, 49 N. H., 9. It is apparent, however, from the face of this contract that it was to be wholly performed in this state. The property was to be transported to Columbus, where the consignee was entitled to receive it from the carrier; the latter was bound to deliver it at that place. The contract could be performed by the company, nowhere -else. Carrying theproperty through a portion of the state of Indiana, did not constitute performance; that was merely a means of enabling the company to perform by delivery of the property at its destination. And the contract being silent as to the time and place of payment of the freight, it was payable” at the time of the delivery of the property to the consignee, and necessarily at the place of delivery; so that, the place of performance by both parties to the contract was in this state. And the rule is that when it appears from a contract made in one *79 state or country that it is to he performed in another, the presumption is, that it was entered into with reference to the laws of the latter, and those laws determine its validity, obligation and effect. Kanaga v. Taylor, 7 Ohio St., 142. Other cases on this subject are largely collected in the briefs of counsel.
It is also the well settled law of this state, that a common carrier cannot, by special agreement, relieve himself from the consequences of his own negligence, nor limit his liability for losses resulting therefrom. This rule is laid down in Welsh v. Railroad Co. 10 Ohio St., 65, as follows: “A railroad company, acting as a common carrier of live stock, cannot by special contract, procure exemption' from responsibility for losses arising from its own neglect of the duties incident to such employment. Such common carrier is liable for damages resulting from defective and unsafe cars or vehicles of transportation, notwithstanding-an express contract to the contrary.” And see Davidson v. Graham, 2 Ohio St., 132; Graham v. Davis, 4 Ohio St., 362; Railroad Co. v. Curran, 19 Ohio St., 3; Railroad Co. v; Pontius, Ibid, 221; Knowlton v. Railway Co., Ibid, 263; Express Co. v. Backman, 28 Ohio St., 144; Express Co. v. Schwab, 53 Ohio St., 659.
We find no error in the charge of the court that could operate to the prejudice of the defendant below.
One of the animals injured while in transit over the defendant’s road, was a mare called Mora ; and the plaintiff was allowed to give evidence of her pedigree, showing her blood relationship to the celebrated trotting horse, Jay Eye See, and other noted horses. This evidence was *80 objected to by the defendant, and the objection here urged against it is, that it was too remote. But the pedigree of a horse usually enters into the estimate of its value; and that of horses kept for racing purposes, is considered of importance among dealers in horses of that kind; and we think the evidence was competent as effecting the value of the mare.
For the purpose of proving the speed of Jay Eye See, and other horses to which Mora was related, in trotting and pacing', the plaintiff was permitted 'to testify to information he obtained from the annual reports of the American Trotting Association, which, it appeared, keeps a record of extraordinary speed made by horses at races held under authority of recognized racing organizations; and it further appeared that the record is issued by the association in published volumes which are accepted and acted upon by handlers and dealers in trotting, pacing and running horses, and persons interested in that kind of stock, as the authentic and official record of the speed shown by noted horses. The defendant objected to this testimony, particularly to that purporting to be information obtained by the witness from the published record. There would seem to be no serious objection to evidence of the fact that the horses had a record for extraordinary speed, nor to proof of that fact by the production of the record. It might be impracticable; if not impossible, to prove the speed of a horse by ej7e witnesses of the races, especially after the lapse of a long time. If such witness were called he could scarcely do more than testify to the speed as that was announced by the judges, or as shown by the published account; and it would become necessary for the witness to *81 refer to the record kept by those in charge, or published under their authority. And when that record is published by such authority, and as so published is acepted and acted upon by those interested in, and conversant with such matters, as authentic and official, we see no reason why it may not be admissible whenever the original would be. The fact that there is such published record, so acknowledged and recognized, enters into the estimation of the value of the horse, and that of his descendants and relatives, among dealers in horses of that kind. The speed of the horse, if that were not generally known, might not be so important as affecting the value. But while such evidence was admissible, it was clearly incompetent for the witness to testify to information which he claimed to have obtained from reading the record as published by the Trotting Association ; and for this error the judgments below must be reversed.
Another question made, relates to the qualification of a witness by the name of Cox, who was permitted to give an opinion on the value of the hammer test as a means of detecting breaks in car wheels. The witness testified that he had been engaged in the business of building railroad cars for ten years, and during that time had given particular attention to ear wheels and their construction. The testimony was competent, its weight was for the jury.

Judgment reversed.